**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| |
|---|
| **NURIT ZEEVI**, *et al.*, |
| Plaintiffs, |
| v. |
| **UNITED STATES DEPARTMENT OF STATE**, |
| Defendant. |

Case No. 1:25-cv-03854 (TNM)

**MEMORANDUM ORDER**

Nurit Zeevi is a U.S. citizen who lives in Israel.  In Israel, she gave birth to her daughter,

M.Z.  Zeevi wants the federal government to recognize her daughter's U.S. citizenship.  So far,

that quest has been fruitless.  Last year, the U.S. Embassy in Jerusalem rejected M.Z.'s

application for a Consular Report of Birth Abroad and a U.S. passport.  Zeevi now sues, both for

herself and on her daughter's behalf.  She claims that the State Department's denial of her

daughter's citizenship violates the Administrative Procedure Act and the Fifth Amendment.  The

State Department moves to dismiss, contending that Zeevi lacks standing to bring her own

claims and that neither Plaintiff's case is reviewable under the APA.  The Court agrees on the

former but not the latter.  Zeevi lacks standing to advance her own claims, but M.Z.'s APA claim

may proceed.

**I.**

Zeevi is a U.S. citizen who resided in California for more than eight years, "during which

she worked, volunteered, married, and gave birth to her first child"—a son.  Compl., ECF No. 1,

¶¶ 10, 19.  Zeevi later divorced but "continued to raise her son under a shared physical and legal

custody arrangement." *Id.* ¶ 10.  Throughout her years in the United States, Zeevi "traveled abroad at least once annually for work and family reasons and therefore never accumulated a single continuous 365-day period of physical presence in the United States." *Id.*

Zeevi's second child—her daughter, M.Z.—was born in 2013 out of wedlock and after Zeevi had moved to Israel.  *Id.* ¶ 11.  More than ten years later, Zeevi resolved to obtain U.S. citizenship for her.  To that end, she met with a consular officer at the U.S. Embassy in Jerusalem to apply on behalf of M.Z. for a Consular Report of Birth Abroad ("CRBA")[1] and a U.S. passport.  *Id.* ¶¶ 3, 22.  Zeevi "submitted extensive documentation of her U.S. residence," and "[t]he officer acknowledged that this evidence satisfied the five-year rule under 8 U.S.C. § 1401(g)."  *Id.* ¶ 22; *see* 8 U.S.C. § 1401(g) (conferring citizenship on a person born outside the United States with one U.S. citizen parent if that parent "was physically present in the United States or its outlying possessions for a period or periods totaling not less than five years" before the person's birth).

But the Embassy rejected M.Z.'s application.  Compl. ¶ 23.  The reason:  Zeevi "had not shown one year of *continuous* presence in the United States before [M.Z.'s] birth."  *Id.*; *see* 8 U.S.C. § 1409(c) (providing that a person born "outside the United States and out of wedlock shall be held to have acquired at birth the nationality status of his mother, if the mother had the nationality of the United States at the time of such person's birth, and if the mother had previously been physically present in the United States or one of its outlying possessions for a continuous period of one year").

---

[1]  A Consular Report of Birth Abroad is an official document issued by the State Department to children born outside the United States to U.S. citizen parents.  It serves as proof of those children having acquired U.S. citizenship at birth.  *See* 22 U.S.C. § 2705(2).

Zeevi now sues here.  She brings claims both for herself and on her daughter's behalf. Zeevi asserts that the State Department's denial of M.Z.'s application was "arbitrary, capricious, and contrary to law" under the APA.  Compl. ¶ 25; *see* 5 U.S.C. § 706(2)(A).  To support that claim, she argues that "the Embassy misinterpreted 8 U.S.C. § 1409(c) by requiring [her] to prove one year of continuous physical presence" even if she met "the five-year standard in § 1401(g)."  Compl. ¶ 26.  Zeevi also advances an equal-protection claim under the Fifth Amendment.  *Id.* ¶ 32; *see Bolling v. Sharpe*, 347 U.S. 497, 499 (1954) (extending the equal-protection guarantee to the Fifth Amendment).  In her telling, the State Department's application of the statutory framework violates her equal-protection right:  "[U]nwed fathers who accumulated five years of residence in the United States—even if not continuous—can transmit their citizenship to children," whereas "unwed mothers with the very same U.S. residence are barred unless they can show one continuous year of presence."  Compl. ¶ 33.

The State Department moves to dismiss.  Mot. to Dismiss, ECF No. 10.  It contends that Zeevi "lacks standing to bring this action because she herself is not injured by [the State Department's] alleged unlawful conduct."  *Id.* at 1.  As to both Plaintiffs, the State Department also maintains that their APA claims are unreviewable "because Congress provided an alternative scheme by which to raise the nationality claim."  *Id.*; *see* 5 U.S.C. § 704 (limiting APA review to "[a]gency action made reviewable by statute and final agency action for which there is no other adequate remedy in a court").  The State Department's motion is ripe.

## II.

Federal courts have limited jurisdiction, and they "presume[] that a cause lies outside this limited jurisdiction."  *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994).  To survive a motion to dismiss under Rule 12(b)(1), the plaintiff must establish subject-matter

jurisdiction. *See Arpaio v. Obama*, 797 F.3d 11, 19 (D.C. Cir. 2015). In evaluating a Rule 12(b)(1) motion, the Court must "treat the complaint's factual allegations as true . . . and must grant plaintiff the benefit of all inferences that can be derived from the facts alleged." *Sparrow v. United Air Lines, Inc.*, 216 F.3d 1111, 1113 (D.C. Cir. 2000) (cleaned up). But those factual allegations "will bear closer scrutiny in resolving a 12(b)(1) motion than in resolving a 12(b)(6) motion for failure to state a claim." *Schilling v. Pelosi*, 633 F. Supp. 3d 272, 274–75 (D.D.C. 2022) (cleaned up), *aff'd sub nom.*, *Schilling v. U.S. House of Reps.*, 102 F.4th 503 (D.C. Cir. 2024). If the Court determines that it lacks jurisdiction, it must dismiss the claim or action. Fed. R. Civ. P. 12(h)(3).

To overcome dismissal under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Hurd v. District of Columbia*, 864 F.3d 671, 678 (D.C. Cir. 2017) (per curiam) (cleaned up). A plaintiff must plead enough "factual content [to] allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The Court accepts the complaint's factual allegations as true and grants the plaintiff "all inferences that can be derived from the facts alleged." *Xia v. Tillerson*, 865 F.3d 643, 649 (D.C. Cir. 2017) (cleaned up). But the Court does not credit any "legal conclusion couched as a factual allegation." *Iqbal*, 556 U.S. at 678 (cleaned up).

The parties quarrel over Zeevi's standing and the viability of both Plaintiffs' APA claims. The Court holds that Zeevi lacks standing and dismisses her claims from the case. With respect to M.Z., the Court concludes that her APA claim survives dismissal. The Court addresses the two issues in order.

4

### III.

"Article III standing is a bedrock constitutional requirement . . . ." *FDA v. All. for Hippocratic Med.*, 602 U.S. 367, 378 (2024) (cleaned up).  To have standing, "a plaintiff must demonstrate (i) that she has suffered or likely will suffer an injury in fact, (ii) that the injury likely was caused or will be caused by the defendant, and (iii) that the injury likely would be redressed by the requested judicial relief." *Id.* at 380.  The injury must be "concrete and particularized"—it "must affect the plaintiff in a personal and individual way." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 & n.1 (1992).  "And standing is not dispensed in gross; rather, plaintiffs must demonstrate standing for each claim that they press and for each form of relief that they seek . . . ." *TransUnion LLC v. Ramirez*, 594 U.S. 413, 431 (2021).

Standing is "an indispensable part of the plaintiff's case," so "each element must be supported in the same way as any other matter on which the plaintiff bears the burden of proof." *Lujan*, 504 U.S. at 561.  "At the pleading stage, general factual allegations of injury resulting from the defendant's conduct may suffice . . . ." *Id.*  Still, as with other components of the plaintiff's case, those allegations cannot be mere "labels and conclusions" or "naked assertions devoid of further factual enhancement." *See Iqbal*, 556 U.S. at 678 (cleaned up).  Ultimately, "[i]t is the responsibility of the [plaintiff] clearly to allege facts demonstrating that he is a proper party to invoke judicial resolution of the dispute." *Warth v. Seldin*, 422 U.S. 490, 518 (1975).

Zeevi does not carry her constitutional burden.  Nowhere in the Complaint does she allege an injury specific to her.  The only injury that the Complaint mentions is the denial of M.Z.'s application for a CRBA and U.S. passport.  *See* Compl. ¶ 3.  Even read in Zeevi's favor, the Complaint contains no allegations as to how that denial harmed Zeevi—an omission that is fatal for Zeevi's own claims.  *See Lujan*, 504 U.S. at 561.

Tacitly acknowledging that shortcoming, Zeevi tries to bridge the factual gap in her opposition to the State Department's motion to dismiss. For the first time, she details the "immediate and concrete consequences" that M.Z.'s citizenship status has on Zeevi—including restraints on her travel and "[t]he financial costs and administrative burdens associated with visa applications." Pls.' Opp'n, ECF No. 11, at 4–6.

The problem for Zeevi is that her injury allegations are misplaced. After all, "[i]t is well settled law that a plaintiff cannot amend his or her complaint by the briefs in opposition to a motion to dismiss." *Kingman Park Civic Ass'n v. Gray*, 27 F. Supp. 3d 142, 160 n.7 (D.D.C. 2014) (collecting cases). It is telling, indeed, that Zeevi does not once cite her Complaint when describing her injuries in the opposition. *See* Pls.' Opp'n at 4–6. Hers is a textbook case of attempting to amend the Complaint by opposing a motion to dismiss. Courts routinely block that effort, *see Kingman Park*, 27 F. Supp. 3d at 160 n.7, and so will this one.

Because Zeevi has not established standing, the Court will dismiss her claims for lack of jurisdiction. Zeevi's APA claim thus cannot proceed. Dismissing Zeevi also knocks out the Fifth Amendment claim because the only alleged equal-protection violation relates to Zeevi's status as an unwed mother. *See* Compl. ¶¶ 32–35; *see also Warth*, 422 U.S. at 499 (holding that "the plaintiff generally must assert his own legal rights and interests, and cannot rest his claim to relief on the legal rights or interests of third parties").

But Zeevi's dismissal does not dispatch the whole case. The State Department does not contest M.Z.'s standing to sue over her own application's denial—and rightly so. *See Muthana v. Pompeo*, 985 F.3d 893, 902 (D.C. Cir. 2021) (holding that "the alleged deprivation of American citizenship without due process of law is a judicially cognizable injury in fact" that is "actual and personal" to the plaintiff ). The State Department also concedes that Zeevi can

pursue M.Z.'s APA claim as her "next friend" under Rule 17(c).  Mot. to Dismiss at 7 n.3.  Once again, the Court agrees.  *See* Fed. R. Civ. P. 17(c) ("A minor or an incompetent person who does not have a duly appointed representative may sue by a next friend or by a guardian ad litem."); *see also Muthana*, 985 F.3d at 902 ("A minor's parent or close relative is a natural fit to serve as his next friend in most cases.").  The Court thus addresses the merits of M.Z.'s APA claim.

## IV.

### A.

The APA directs courts to "hold unlawful and set aside agency action" that is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law."  5 U.S.C. § 706(2)(A).  But that mandate has bounds.  Most relevant here is § 704—which limits judicial review to "final agency action for which there is no other adequate remedy in a court."  *Id.* § 704.  "Section 704 reflects Congress' judgment that 'the general grant of review in the APA' ought not 'duplicate existing procedures for review of agency action' or 'provide additional judicial remedies in situations where Congress has provided special and adequate review procedures.'" *Citizens for Resp. & Ethics in Wash. v. DOJ*, 846 F.3d 1235, 1244 (D.C. Cir. 2017) (quoting *Bowen v. Massachusetts*, 487 U.S. 879, 903 (1988)).

At the same time, § 704 does not "defeat the [APA's] central purpose of providing a broad spectrum of judicial review of agency action."  *Bowen*, 487 U.S. at 903.  In determining whether an alternative remedy is "adequate," courts thus "look for clear and convincing evidence of legislative intent to create a special, alternative remedy and thereby bar APA review." *Citizens for Resp. & Ethics in Wash.*, 846 F.3d at 1244 (cleaned up).

In assessing that evidence, courts apply certain principles.  *First*, although the alternative remedy "need not provide relief identical to relief under the APA," it must be "of the same

genre." *Garcia v. Vilsack*, 563 F.3d 519, 522 (D.C. Cir. 2009) (cleaned up). "[D]oubtful and limited relief" is inadequate. *Bowen*, 487 U.S. at 901. *Second*, given "the APA's presumption of reviewability for all final agency action," an adequate remedy must offer meaningful review of the challenged agency action or its underlying legal question. *See Sackett v. EPA*, 566 U.S. 120, 127–29 (2012); *id.* at 127 ("The remedy for denial of action that might be sought from one agency does not ordinarily provide an 'adequate remedy' for action already taken by another agency."). *Third*, an alternative review scheme is inadequate if it is "arduous, expensive, and long"—especially if it "carr[ies] the risk of serious criminal and civil penalties." *U.S. Army Corps of Eng'rs v. Hawkes Co.*, 578 U.S. 590, 600–01 (2016) (cleaned up).

## B.

Against that backdrop, consider the alternative remedy put forward here. According to the State Department, M.Z.'s APA claim cannot proceed because Congress provided adequate review in the Immigration and Nationality Act ("INA"), via 8 U.S.C. § 1503(b) and (c). Mot. to Dismiss at 7. A summary of that scheme is in order.

Section 1503 provides two paths for a person who "claims a right or privilege as a national of the United States and is denied such right or privilege by any department or independent agency . . . upon the ground that [s]he is not a national of the United States." 8 U.S.C. § 1503. If a person "is within the United States," she may go straight to federal court and sue the agency for a declaratory judgment. *Id.* § 1503(a).

The road is more winding for a person—like M.Z.—who is outside the United States. As a first step, she must apply "to a diplomatic or consular officer of the United States in the foreign country in which [s]he is residing for a certificate of identity for the purpose of traveling to a port of entry in the United States and applying for admission." *Id.* § 1503(b). If the officer finds that

8

the "application is made in good faith and has a substantial basis," then "he shall issue" the certificate. *Id.* If the officer denies the certificate, then the applicant may "appeal to the Secretary of State, who, if he approves the denial, shall state in writing his reasons for his decision." *Id.* The statute offers no further review if the Secretary endorses the denial. *See id.*

If the person secures a certificate of identity, she may proceed to the second step and "apply for admission to the United States at any port of entry." *Id.* § 1503(c). In making that application, she is "subject to all the provisions of [the INA] relating to the conduct of proceedings involving aliens seeking admission to the United States." *Id.* If granted admission, she may then seek "a judgment declaring [her] to be a national of the United States." *Id.* § 1503(a). If denied admission, her sole remedy is to challenge that denial in habeas. *Id.* § 1503(c).

## C.

Section 1503's review scheme does not displace M.Z.'s APA claim. In so ruling, the Court joins two colleagues in this district. *See Chacoty v. Pompeo*, 392 F. Supp. 3d 1, 7–12 (D.D.C. 2019); *Gonzalez Boisson v. Pompeo*, 459 F. Supp. 3d 7, 12–17 (D.D.C. 2020); *accord Abuhajeb v. Pompeo*, 531 F. Supp. 3d 447, 454–56 (D. Mass. 2021).[2] The Court discerns no "clear and convincing evidence of legislative intent to create a special, alternative remedy and thereby bar APA review." *See Citizens for Resp. & Ethics in Wash.*, 846 F.3d at 1244 (cleaned up). Section 1503's language (enacted six years after the APA) is permissive, not mandatory— stating what aggrieved persons "may" do rather than what they must do. *See* 8 U.S.C. § 1503.

---

[2] The only court to have ruled the other way is the divided Fifth Circuit panel in *Hinojosa v. Horn*, 896 F.3d 305 (5th Cir. 2018) (per curiam). *See id.* at 312. For the reasons explained below, and especially in light of binding Supreme Court precedent, the Court disagrees with the Fifth Circuit's majority opinion.

Meanwhile, the State Department has failed to identify any statutory text that clearly supplants "the APA's presumption of reviewability for all final agency action." *See Sackett*, 566 U.S. at 129.

Indeed, the procedure in § 1503(b) and (c) bears the hallmarks of inadequacy. It offers only "doubtful and limited relief" to M.Z. in her challenge to the Embassy's denial of her CRBA and U.S. passport. *See Bowen*, 487 U.S. at 901. Seeking review of her citizenship claim, she must first apply for a certificate of identity. 8 U.S.C. § 1503(b). If the consular officer refuses to grant her one, she may appeal to the Secretary of State. *Id.* If the appeal fails, that is the end of the road; the statute provides no further recourse.[3]

Even if M.Z. obtains a certificate and makes it to a port of entry, there still is step two: M.Z. must apply for admission subject to all the INA's provisions, *id.* § 1503(c), including those authorizing the inspection, detention, and removal of aliens seeking admission. *See id.* § 1225. If the Attorney General denies M.Z. admission, her sole remaining avenue is habeas review of that decision. *Id.* § 1503(c). Only if the Attorney General admits her may M.Z. sue the State Department "for a judgment declaring [her] to be a national of the United States." *Id.* § 1503(a).

This review scheme flunks the adequacy test in two ways that the Supreme Court has recently highlighted.

*First*, it leaves uncertain whether M.Z. would ever obtain review of the Embassy's decision to deny her application for a CRBA and U.S. passport. There are several dead ends

---

[3] To boot, the State Department "does not concede that the denial of a certificate of identity by itself would be sufficient to obtain APA review." Mot. to Dismiss at 10 n.4. This appears at odds with the Government's position in prior cases. *See Hinojosa*, 896 F.3d at 312 ("The only instance in which the Plaintiffs might not receive judicial review under the statute is if their petitions for certificates of identity are denied by the Secretary State. At that moment, they would be entitled to relief under the APA—a point which the Government concedes.").

along the way: at step one, if the Secretary of State affirms the denial of her certificate of identity; and, at step two, if the Attorney General refuses to admit her. *See id.* § 1503(b), (c). And, to be clear, her suit in this latter circumstance would lie against a Department of Justice official, not the State Department.

*Sackett* explains why this is inadequate. The plaintiffs in that case (the Sacketts) had received an "administrative compliance order" from the Environmental Protection Agency. *Sackett*, 566 U.S. at 122. That order asserted that they had violated the Clean Water Act "by placing fill material on the[ir] property; and on this basis it direct[ed] them immediately to restore the property pursuant to an EPA work plan." *Id.* Seeking to challenge that order, the Sacketts launched an APA suit against the EPA. *Id.*

The Supreme Court concluded that the Sacketts' suit could proceed. In its eyes, there was "no other adequate remedy" that would foreclose APA review under § 704. *Id.* at 127. As the Court explained, "judicial review ordinarily comes by way of a civil action brought by the EPA" in Clean Water Act enforcement cases. *Id.* But that was no substitute because the Sacketts could not "initiate that process" and incurred additional liability "each day they wait[ed] for the Agency to drop the hammer." *Id.* Nor was there an adequate alternative in "[t]he other possible route to judicial review—applying to the Corps of Engineers for a permit and then filing suit under the APA if a permit is denied." *Id.* After all, "[t]he remedy for denial of action that might be sought from one agency does not ordinarily provide an 'adequate remedy' for action already taken by another agency." *Id.*

So too here. What M.Z. wants is review of the Embassy's denial of her CRBA and U.S. passport. What she receives from § 1503 is something quite different. If stuck in one of the statute's cul-de-sacs, all she obtains is review of a different agency's denial of another

11

application—whether for a certificate of identity or for admission into the United States.  That will not do under § 704.  *Accord Gonzalez Boisson*, 459 F. Supp. 3d at 16 (rejecting Government's adequacy argument because, although "[a]ll roads might lead to judicial review, . . . not all of them lead to review of [plaintiff's] *citizenship*").

*Second*, even if M.Z. successfully navigated § 1503(b) and (c), that process would still be too "arduous, expensive, and long" to count as adequate.  *See Hawkes*, 578 U.S. at 601.  *Hawkes* is instructive.  That case involved a "jurisdictional determination" by the Army Corps of Engineers "stating that the [plaintiffs'] property contained 'waters of the United States'" subject to the Clean Water Act.  *Id.* at 596.  The plaintiffs sued the Army Corps to challenge the jurisdictional determination under the APA.  *Id.*  Among other defenses, the Army Corps insisted that the action was unreviewable under § 704 because "there [we]re adequate alternatives for challenging [the jurisdictional determination] in court."  *Id.* at 597.  It offered two: "either discharge fill material without a permit, risking an EPA enforcement action during which [the plaintiffs] can argue that no permit was required, or apply for a permit and seek judicial review if dissatisfied with the results."  *Id.* at 600.

To the Supreme Court, neither alternative sufficed.  *Id.*  As to option one, the Court highlighted that EPA enforcement "carr[ied] the risk of serious criminal and civil penalties."  *Id.* (cleaned up).  Reaffirming *Sackett*, the Court ruled that the APA did not require the plaintiffs to "assume such risks while waiting for EPA to 'drop the hammer' in order to have their day in court."  *Id.* (quoting *Sackett*, 566 U.S. at 127).

Option two was no better.  In the Court's view, it was no "adequate alternative to APA review for a landowner to apply for a permit and then seek judicial review in the event of an unfavorable decision."  *Id.* at 601.  That was because "the permitting process can be arduous,

expensive, and long," demanding various environmental assessments and inventories. *Id.* And even at the end of that grueling process, the plaintiffs would receive review only of the permit denial—*not* the jurisdictional determination. *Id.* In light of "the APA's presumption of reviewability for all final agency action," the Court reasoned that "the mere fact that permitting decisions are reviewable should not suffice to support an implication of exclusion as to other agency actions." *Id.* at 601–02 (cleaned up). The plaintiffs' APA action could thus move forward. *Id.* at 602.

*Hawkes* supports M.Z.'s bid for APA review. Like the permitting process there, M.Z.'s journey through § 1503 would be "arduous, expensive, and long." *See Hawkes*, 578 U.S. at 601. It would require M.Z. to fly from Israel to a U.S. port of entry and then submit to the INA's admission procedures—which, as the State Department concedes, include inspection, detention, and deportation. 8 U.S.C. § 1225; *see* Reply, ECF No. 12, at 3–4. And even after all that expense and effort, M.Z. could walk away with no review of the Embassy's denial. That is not what § 704 demands; *Sackett* and *Hawkes* confirm as much.

The Court need not—and does not—decide whether § 1503(a) would provide adequate relief for a person already in the United States. The D.C. Circuit's decision in *Xia* thus is inapt here. In that case, several Chinese nationals residing in the United States challenged the revocation or non-renewal of their U.S. passports under both the APA and the INA. *See Xia*, 865 F.3d at 646–48, 655. The problem with their § 1503 claims was that they had sued in the wrong venue. *Id.* at 655. As the D.C. Circuit emphasized, "Section 1503 requires a claimant to file in 'the district in which such person resides or claims a residence.'" *Id.* (quoting 8 U.S.C. § 1503(a)). The plaintiffs, meanwhile, resided in various States outside the District of Columbia. *Id.* In that context, the D.C. Circuit reasoned that "while section 1503 provides plaintiffs an

13

adequate avenue to assert their citizenship claims, it is not available to them in the District of Columbia." *Id.* That drive-by remark on adequacy is not only dicta, but it also sheds no light on whether § 1503(b) and (c) provide adequate relief for persons outside the United States.

Finally, the parties quarrel over an older precedent. In *Rusk v. Cort*, 369 U.S. 367 (1962), the Supreme Court dealt with a plaintiff (Cort) whose U.S. passport application had been denied "on the ground that he had lost his citizenship . . . by remaining outside the United States for the purpose of avoiding military service." *Id.* at 369. The Secretary of State argued that the APA claim was a nonstarter under § 703 because 8 U.S.C. § 1503(b) and (c) "provide[d] the exclusive procedure under which Cort could attack the administrative determination that he was not a citizen." *See id.* at 370–73; *see* 5 U.S.C. § 703 ("The form of proceeding for judicial review is the special statutory review proceeding relevant to the subject matter in a court specified by statute or, in the absence or *inadequacy* thereof, any applicable form of legal action . . . ." (emphasis added)).

The Supreme Court let Cort's suit advance. As the Court saw things, nothing supported the conclusion "that a native of this country living abroad must travel thousands of miles, be arrested, and go to jail in order to attack an administrative finding that he is not a citizen of the United States." *Rusk*, 369 U.S. at 375. Section 1503's permissive language "show[ed] no intention to provide an exclusive remedy" or to "den[y] existing remedies" like APA review. *Id.* (cleaned up). Instead, § 1503(b) and (c) were targeted at "cut[ting] off the opportunity which aliens had abused under [a predecessor statute] to gain fraudulent entry to the United States by prosecuting spurious citizenship claims." *Id.* at 379. Despite subsequent caselaw that undermines *Rusk*'s full precedential force, *see Califano v. Sanders*, 430 U.S. 99, 105 (1977), *Rusk*'s reasoning favors M.Z.'s argument that § 1503 is not her sole remedy. Based on *Rusk* and

14

more recent binding decisions like *Sackett* and *Hawkes*, the Court rules that M.Z.'s APA claim may proceed.

**V.**

Zeevi has not established standing to pursue her own claims, so the Court dismisses them. She may, however, pursue M.Z.'s APA claim on her behalf.  That claim survives dismissal.

For these reasons, it is hereby

**ORDERED** that the Department of State's [10] Motion to Dismiss is **GRANTED IN PART** and **DENIED IN PART**; and it is further

**ORDERED** that Plaintiff Nurit Zeevi's claims are **DISMISSED** without prejudice.

**SO ORDERED.**

Dated: May 5, 2026                          TREVOR N. McFADDEN, U.S.D.J.